## Wauls v. Rowe

*Black & Davison,* for petitioner.
*Ullman & Painter,* for respondent.

EPPINGER, P.J., July 13, 1966.—More than three years after a final decree divorcing plaintiff, Edna M. Rowe (now Edna M. Wauls), from defendant, Paul R. Rowe, she filed a petition in the divorce proceedings for a rule on defendant to show cause why a supplement "property settlement" agreement should not be approved and incorporated in an order of support. She also asked defendant to show cause why he should not be required to pay all arrearages accrued since February 1, 1965.

The final decree in divorce, dated June 11, 1962, was in the usual form. No mention was made in that decree of the court's approval of what became to be known in these proceedings as the first property settlement agreement.

This first agreement, dated November 18, 1961, was submitted to the court and approved on January 12, 1962. The order said nothing more than that the "property settlement" was approved.

There were actually three written agreements. The first was the one approved by the court on January 12, 1962. The second was an agreement dated November 21, 1962, purporting to amend the first agreement. The third is the one attached to this petition, and it is dated November 14, 1963. This last agreement also purports to amend "a certain agreement", which apparently was the first agreement.

Under the terms of the first agreement, defendant was to pay plaintiff $350, convey all his interest in any real estate and personal property, exclusive of his own personal effects, and his interest in jointly owned motor vehicles to plaintiff. He agreed to pay all liens and encumbrances against the property transferred to plaintiff. He agreed to pay her $45 per week for life, and to secure this payment with a $10,000 judgment note. These payments were intended to be tax deductible to defendant and taxable to plaintiff. He also agreed to maintain a $7,000 insurance policy on his life in favor of the parties' minor children. If there was no policy at

his death, his estate was to be liable to the children for that amount.

By the terms of the second agreement, he was to be released from paying the liens, from paying the $45 weekly to plaintiff and from maintaining the $7,000 life insurance policy for the children. He agreed, however, to pay plaintiff $40 per month for each of the two children, Janice and Geraldine.

The third agreement, written as though the second one never existed, required defendant to pay plaintiff $50, released him from the $45 weekly payment in the first agreement and, in lieu thereof, required him to pay plaintiff $120 per month. These payments were to be deemed to be exclusively for the support of the daughters, and if one became ineligible for support, then the sum continued for the support of the remaining one. When the second became ineligible for support, the payments continued in lieu of alimony, though at the time of this agreement the parties were divorced and plaintiff had remarried. Until the sum became a payment in lieu of alimony, it was not to be taxable to plaintiff; thereafter, however, it was to be and also deductible by defendant.

Apparently, defendant complied with the terms of this third agreement from the date it was made in November of 1963 until February 1, 1965.

An answer was filed denying the validity of the third agreement and alleging it was executed by defendant under mistakes of fact and law and alleging the court has no jurisdiction to grant the relief requested.

The questions are: In the divorce proceedings, may the court: (1) approve the third agreement, (2) incorporate it in an order for support, and (3) require defendant to pay the arrearages accumulated from February 1, 1965, calculated to be a sum in excess of $2,000?

With the amendment by the Act of December 30,

1959, P. L. 2055, sec. 1, 23 PS §15, the original jurisdiction of the court of common pleas in divorce actions was enlarged. Among other things, the court was permitted to determine and dispose of property rights and interests between spouses, provide for support for the children and approve property settlement agreements submitted by the parties.

The court's authority was set forth in these provisions of the act:

"The several courts of common pleas . . . shall have original jurisdiction of cases of divorce . . . and, where they have jurisdiction, *may* determine in one action the following matters, and issue appropriate decrees or orders with reference thereto, and *may* retain continuing jurisdiction thereover": (Italics supplied.)

In section 4 of the act, 23 PS §55, it is stated that all the matters could be covered by one decree or each matter covered in separate decrees. This same section gave the court equity powers and jurisdiction and authorized it to issue injunctions or other orders necessary to protect the interests of the parties. The court was also authorized to grant such other relief or remedy as equity and justice require.

Finally, paragraph 3 of section 4 provided that whenever a decree or judgment is granted which nullifies or terminates the bonds of matrimony, then all property rights which are dependent upon such marital relations are terminated unless the court otherwise expressly provides in its decree.

The divorce decree in this case was limited to terminating the bonds of matrimony between the parties. Upon the submission of the first property settlement agreement on the motion of plaintiff, the court's order said simply: ". . . the within agreement is approved by the Court". There was *no order retaining jurisdiction in the case for any purpose.*

The effect of this approval of the first agreement was to make it part of the record. What else was done by this approval? It was not physically or legally incorporated or merged in the decree (Wright v. Stidham, 95 Ariz. 316, 390 P. 2d 107), and the parties were not ordered to perform it.

In the Wright case, supra, the wife obtained a default judgment in divorce. At the same time, a property settlement agreement, signed by the parties, was filed, but the judgment did not incorporate the property settlement in the agreement. With regard to that agreement, the decree of divorce said: ". . . the Property Settlement Agreement heretofore entered into between the parties is fair and just"; and it concludes: "It is further ordered, adjudged and decreed that the Property Settlement Agreement heretofore entered into between the parties hereto, be and hereby is ratified, approved and confirmed in all respects".

The court held that the approval of the property settlement agreement in the original divorce decree did not operate to make it part of, and enforceable as, a decree of the court.

In Davis v. Davis, 229 Ind. 414, 417-18, 99 N. E. 2d 77, 78, the court said:

"In the case now before us, the evidence revealed that the contract settling all of the property rights of appellant and appellee was submitted to the trial court, read and approved by the court, and made a part of the record in the divorce action. The court thereby determined the validity of the contract; and all matters pertaining to the property settlement were adjudicated by the judgment granting the divorce".

Elsewhere in the opinion, the court said:

"By a long line of decisions . . . the doctrine has been generally affirmed and settled in this jurisdiction that a decree of divorce by a court having jurisdiction of the subject-matter and the parties is deemed

and held to be an adjudication between the divorced parties of all property rights or questions growing out of or connected with the marriage. As a general rule, all such questions, unless excepted therefrom, are considered as put at rest by the judgment, and the parties thereto are precluded thereby until it is set aside in a proper proceeding".

See also Rogers v. Rogers, 175 So. 2d 232 (Fla. App.), which held that where a divorce decree was complete and jurisdiction was not retained for any purpose, property rights became fixed by the decree and were not subject to modification.

Notice how closely paragraph 3 of section 4 of the Act of 1959 amending The Divorce Law, supra, follows the wording of the opinion of the Indiana court.

This court, therefore, concludes that in approving the first property settlement agreement, it only determined the validity of the contract; that is, that the first property settlement agreement was just and fair.

We must also conclude on the basis of the act, supported by the opinion in the Davis case, supra, that when the divorce decree was granted, no other provisions having been made, the property rights between the parties depending upon the marital relationship were terminated. The interests of the parties in any property were controlled by the terms of the first property settlement agreement.

Now, then, may the court, upon petition, in effect nullify its approval of the first agreement and approve another? We found no Pennsylvania cases on this subject. But in Jones Memorial Baptist Church v. Brackeen, 416 Pa. 599, 207 A. 2d 861, where a consent decree was entered in an equity action, the court said:

" 'A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties—a contract binding

the parties thereto to the terms thereof . . . As a contract, the court, in the absence of fraud, accident or mistake, had neither the power nor the authority to modify or vary the terms set forth' ".

This reasoning, applied in this divorce case, is consistent with the general rule expressed in 24 Am. Jur. 2d 1033, "Divorce and Separation", §909, as follows:

". . . the court does not have the power to modify a true property settlement or a decree incorporating it, even though it provides for periodic payments as distinguished from a lump sum or a transfer of property, unless the settlement itself authorizes a modification by the court".

And, at page 1034:

"Where a separation agreement has not been merged in the divorce decree, the court, in the absence of an agreement of the parties to the contrary, does not have the power to modify the support provisions of the agreement".

By the terms of the first property settlement agreement, the husband was required to pay the wife $45 per week for her life. Generally, a court has the power to modify a decree for alimony based upon an agreement. Where the alimony payments are provided for as a part of a "property settlement agreement", the court must find, however, that the alimony payments are severable from the rest of the agreement: "Divorce and Separation", §909, 24 Am. Jur. 2d 1033-34, and not part of the property settlement. So if this first agreement had been incorporated in a decree, it is the type that could have been amended by a court, because the $45 weekly payment looks like alimony. But in Pennsylvania, there is no provision for permanent alimony after divorce a. v. m. Our courts would be bound to conclude, therefore, that the $45 weekly payment was in the nature of an installment payment for property settled upon plaintiff.

We conclude, therefore, that the court is without authority to grant the prayer of the petition to approve the third property settlement agreement, incorporate its terms in an order for support and enforce its provisions, noting that the first property settlement agreement contained no provisions for amending it.

While the divorce code provides that all matters relating to the marital situation may be heard and determined in the divorce proceedings, this is not mandatory and does not require that the different matters named in the statute be consolidated into one action: Commonwealth v. Miller, 202 Pa. Superior Ct. 573, 198 A. 2d 373.

ORDER OF COURT

Now, July 13, 1966, the prayer of the petition is denied. Exception is granted to plaintiff.